This next case is case number 4-15-0739 People v. Christopher Hugger. Appearing for appellant is Attorney Ryan Wilson and for the appellee is Attorney Timothy Laundrigan. Good morning. Mr. Wilson, are you ready to proceed? You may. May it please the court. Counsel. Good morning, Your Honors. I represent Christopher Hugger on behalf of the Office of the State Appellate Defender. Defense counsel committed a number of prejudicial errors that denied Christopher a fair trial. And the first error occurred even before trial began. Before Voight-Dyer, the court asked the state whether it had made any plea offers to defense counsel. And the state said that it had. The court then turned to defense counsel and asked if defense counsel had conveyed those offers to Christopher, and defense counsel said that she had. It then asked Christopher if he had received those offers, and Christopher said he had not. Confused, I can only imagine, about that exchange, the court asked defense counsel to explain what was going on. Defense counsel said that she could have her investigator come and testify that they were at Christopher's house the Friday before Voight-Dyer began. Christopher said that might be true, but he noted that she left out the part about he wasn't at his house when they came and they visited. Apparently, defense counsel had spoken to a woman who was at Christopher's house. It's a little unclear if it's a girlfriend or a sister who it may have been. But there's no evidence in this record that counsel conveyed that plea offer to the defendant. Now, we have the additional problem of there being a plea offer made prior to that by the state. The record is silent as to the terms of that plea offer. We don't know, you know, what the offense was or what the year range was that the state was proposing. But the record seems clear that that offer was never conveyed to Christopher. So after hearing this information in court, the court asked the state to explain what the plea offer was, their last plea offer. And the state said, well, it's three years for simple delivery, and it is available until the jury walks into the courtroom. The judge then asked defense counsel if she conveyed that to her client. She said she had, and the judge called the jury in or the veneer in for Voight-Dyer. And the defendant's in the courtroom at that time hearing this, correct? Correct. The defendant is in the courtroom at that time. Okay. So if the defendant is there, the offer is on the table at that time. The offer is communicated, and it hasn't been withdrawn at that point. What is the prejudice to the defendant where he either could have accepted the offer at that point or requested time to think about it? So I have two different parts or two different responses to that. The response directly related to your question is Christopher isn't an attorney. He hasn't had any legal training. So when he hears the state say the offer is available until the jury walks into the courtroom, and then the judge calls the prospective jurors in the courtroom, based on the statement that Christopher made in the PSI, which was that he wasn't helped in the right way by his defense counsel, and had he been, he would have taken the three years, it appears that he may have believed that when the jury, when the veneer walked into the courtroom, that that offer was no longer on the table at that point. And the record doesn't indicate, like it does in other places, that there was a continuance taken or that there was a recess taken in between the time when the state explained what the terms of the plea offer were and when the jury was called into the courtroom. So you have a sequence of events that seems to have taken place in fairly rapid succession where the defendant is told a three-year offer is on the table until the jury walks into the courtroom. The court confirms that defense counsel conveys that offer and then immediately calls the veneer into the courtroom. If I were in Christopher's position, I wouldn't think that that offer was available anymore. Now, the second part of my response to your question relates to the other plea offer. Again, there isn't any evidence in this record, and in fact, I would argue the evidence shows that the offer was never conveyed to Christopher. We don't know what that offer was, but Christopher received a 10-year sentence for delivering 0.1 grams of cocaine in this case. That is a very severe sentence, and it's very possible that whatever this first offer was that the state proffered, and I should back up for a minute, his range was 3 to 14 years. It's very possible this initial offer that the state proffered that we know nothing about and which wasn't conveyed to Christopher would have been less than the 10 years. Well, going back to what was actually conveyed in court, as part of the ineffective assistance argument, are you asserting, is the defendant asserting that he would have taken that offer? Yes. So is it relevant as to what the prior offer would have been if he's saying he would have taken the one that was communicated in court? It is relevant insofar as if this court were to say, which I am not advocating for, but if this court were to say the offer was still on the table until the jury was actually selected and that the defendant should have known that. Now, I don't think there's any way that the defendant could have known that because he doesn't have any legal training, but if this court were to find that for some reason the defendant had an opportunity to accept the plea offer that was discussed in court and did not do that, then the first offer becomes relevant because we don't know what the terms of that first offer were, and if those terms made available to the defendant a sentence less than the 10 years that he ultimately received, that is an offer that he should have known about and should have been able to take. What does the Supreme Court's recent decision in People v. Beach require in your opinion in this case relative to what the record tells us how an ineffective assistance claim proceeds in this case? Can it be determined on this record? It can be, and the reason it can be is counsel has an affirmative duty to convey any plea offers that were formally made by the state to the defendant, and that was not done here. Christopher, in the PSI... Didn't defense counsel say you've got a three-year offer, but if the jury comes in, it's gone? That seems to be that he's got to make a choice right then and there. It all comes down to the sequence of events here. The way the transcript represents is that the court asked the state what the offer was, and while the state was explaining what the offer was, defense counsel was conveying that to Christopher, and then the court called the veneer into the courtroom. In my mind, it's a question of did he even have an opportunity to interject and say, hold it, wait a minute, I want to accept this plea offer. What stands out to me about this case, and the thing that I honestly lose sleep about this case, is if defense counsel knew that that offer had never been conveyed to Christopher, why not the first thing that she says when she sees him that morning of trial, why doesn't she say, I've got to talk to you, it's really important, there's an offer on the table? Well, I'm not so sure the record is definitive as to the fact that he hadn't received the offer before the court asked about it. I mean, defense counsel made a representation that the offers had been conveyed, right? And then your client chimes in and says, and I recalled it, that he said a sister, but it may have been girlfriend or whatever, but that, yeah, they talked to my sister, and she told me about it. And so I don't think it's really safe to assume that he didn't know. I don't think the record really proves that. I do not remember. You may be absolutely right. I do not remember if the defendant represented that the sister conveyed an offer. I don't think those words were used. It was something along the lines of, yeah, my sister told me about that, or my sister told me they came by and told her, or something like that. Not those exact words, but certainly something from which you could infer. And then I don't think it's accurate or necessarily demonstrated by the record that there weren't other conversations between your client and defense counsel before they came into court because defense counsel is saying, yes, the offers were conveyed. And I respectfully disagree with that. The reason being, when they had the exchange prior to Boyd-Dyer and the court said, have you conveyed that offer to the defendant? Yes. Christopher said, no, she hasn't. Defense counsel didn't say, I talked to him last Tuesday, I talked to him last Thursday, and I was at his house the Friday before Boyd-Dyer about this. The only thing she said was, I conveyed that offer to him, Your Honor, I was at his house last Friday. She may have been at his house last Friday. His sister may have said, hey, your attorney stopped by last Friday. But as an attorney, as a criminal attorney, if the state has made a plea offer to my client, I'm going to convey that to the client. Well, one of the last things I'm going to do is go up to a family member who probably has no legal experience, may not even understand the case that the defendant is going through, and say, oh, would you let him know that there's a three-year plea offer on the table? I mean, talk about a way of confusing. Well, here's the flip side of that. Sometimes, believe it or not, clients can be hard to catch up with. And you're dealing with family members, and you're trying to let your client know what's going on. You want to see your client, and you can't find your client, and so you go, and you tell his sister, look, the state's offering three years. If he wants to take this, he needs to get in touch with me, he needs to stop by my office, or whatever. So that's kind of the flip side of it. But I would be interested, because I haven't seen that portion of the record, that exchange in court, of course, is very important as to exactly what defense counsel said. But my memory from the brief seemed to suggest that it's not definitive, that defense counsel wasn't saying that it was conveyed to the client as well. And even in that scenario, if it was conveyed to a family member, which I don't believe the record shows that it was, but again, if I'm defense counsel, the first thing I'm saying to my client before boy dire is, did your sister talk to you, there's a three-year plea offer on the table, let's talk about that. And how do we know that didn't happen? Because the defendant told the court that hadn't been conveyed to him. Had it been conveyed to him, he would have said, yes, I received that plea offer. I've never had a case where the defendant has said, you know, an attorney makes a representation, I don't believe I've ever had a case where an attorney makes a representation and the defendant affirmatively contradicts that representation like this in there. Had that discussion taken place, I have no reason to think that the defendant wouldn't have said, yes, she has conveyed that offer to me. But obviously he said that she didn't, and in the PSI, it pretty clearly shows that that offer wasn't conveyed. You know, part of the importance of this claim is the remedy. We're asking under Lafler v. Cooper for it to be sent back for a hearing into some of these matters, and that if it isn't sent back for a hearing under Lafler, then it's sent back for a Krankel inquiry, because the defendant in the PSI did say, I was not helped in the right way by my counsel, because I would have taken the three years. When I come back to Justice Appleton's point, though, we can all agree that the defendant was advised of the offer prior to the trial starting. And so why isn't it sufficient that the defendant had that opportunity to accept the offer before the jury was brought in? I mean, I'm not aware of any case that says you have to have a certain amount of time to make up your mind or to decide. I'm not aware of any case that says you, you know, and I'm not trying to be facetious, any case that says there must be five minutes or anything to allow a defendant to talk about it. But back to what I was saying, the record seems to indicate that this was a very rapid succession thing of, has it been conveyed? Yes. Okay, let's call the veneer in. But regardless of that argument, we still have this other argument that the defendant was never advised of this other plea offer. Well, this gets back to my initial concern. All three of us have been trial court judges, and I won't speak for my colleagues here, but it was very typical practice in the felony courtroom in which I sat where this exact same procedure would play out, where there would be a question asked whether or not an offer has been presented by the State, the defendant, and would be communicated in court with the defendant present exactly as was done here. This is a very typical procedure that was employed here. It's very clear on the record that the defendant was present and heard that offer and that it was still on the table at that point. So I just am having trouble grasping the prejudice to the defendant here, which is essential to the ineffective assistance claim. To the prejudice, again, I would point to the pre-sentence investigation report, where he says that he would have accepted the three-year plea had his attorney properly represented him. But why didn't he? Because it was right there in front of him. And this is just my take on it. If I were in his position and the same thing happened to me and it went that quickly and I knew the offer was valid until the jury walks in and then the judge calls the jury in, I'm just a defendant who's about to be tried by this judge. I don't want to upset the judge. I have an attorney who's going to speak for me. The attorney doesn't speak up and ask for a recess or a continuance or anything else. The judge, which I've seen that scenario before where it's discussed in court, but what I normally see in the records that I read is an additional step, which is the court says, counsel, have you conveyed that to the plea offer or have you conveyed the plea offer to the defendant? Yes, I have. Defendant, have you decided what you would like to do in this case? And then the defendant says, I'd like to, you know, think about the plea. Could we take a recess so I can think about the plea offer? None of that was done here. It was just a very quick succession. And, again, if I'm a defendant in this situation, I'm thinking the offer's off the table at that point. So we have the issue about defense counsel not conveying that offer to her client. And, again, why she didn't do it the morning of Boyd Dyer when she had an opportunity to do so, I'm not sure. Probably because the state got to the defense counsel and said, hey, if you want to avoid trial, take three years and we're done. That's how things work, actually. Which would have been great. I would have liked for that to have been conveyed to the defendant, though. You know, I understand that's the way that things work. It moves very quickly. But where there's evidence in the record that that was never conveyed to the defendant. Okay, I found what I was talking about. So is it accurate that the defendant indicated that his sister had informed him about the plea offers the other day? If that is in my brief, that is accurate. I don't remember that specific language. But if that's in the brief, it's accurate. But, again, there's an inherent inequity to me. A defendant has the right to have his attorney convey the plea offer to him so that he may fully understand the ramifications of that plea offer. I haven't found any case law that says that the information about a plea offer can be delegated to a family member or someone who is not an attorney and conveyed to the defendant. There are a host of problems with a situation like that that I can foresee that we would want to avoid. And so I would argue that that wasn't sufficient, even if it was conveyed to the sister. And so, in court, that wasn't sufficient either? I'm sorry. To convey in court the offer? In court, without giving the defendant an opportunity to voice whether he wished to accept that plea offer, I would argue is not sufficient. But then we have the additional problems that actually occurred during the trial proceedings, if you will. The state was permitted, without objection, to ask every single juror that ultimately sat on Christopher's jury whether they believed that drugs were a problem in their community. Defense counsel didn't object to that. Now, that error, as I've explained in the brief, alone is capable of being reversible. But when you look at the cumulative impact of these errors, it is, frankly, kind of awing. Because you have this jury that's been seated, all of people who believe that drugs are a problem in their community. And then during the evidentiary portion of trial, you have Vinton, who is the informant here, and one of the officers testify to a hearsay statement that Vinton made. Vinton testified that he has bought drugs from Christopher once or twice a week for an extended period of time. Then you have a police officer get up and say, yeah, Vinton told me that he's bought drugs off of the defendant at least 25 times. So the problem here is you have a jury full of people who believe that drugs are a problem in their community, now hearing that the defendant is prolific, maybe overstating it, but he is a regular drug dealer here. If that wasn't enough, then you have the testimony of Officer Quinley, who viewed the video. He didn't see this alleged drug buy take place. He didn't see the defendant even in the car. But he viewed the video, and in front of the jury testified that on the video, he believed he saw a bag containing more of the controlled substances that we were purchasing that was not seized from Christopher or it was never found. So, again, you have this cumulative effect of a jury being full of people who believe that drugs are a problem in their community, hearing that the defendant sold drugs on at least 25 different occasions, and then hearing from a police officer that Christopher had additional drugs in his car at the time of this alleged buy that were never found. Then you have the additional problem of Vinton giving his statement of what occurred that day, and then the police officers coming in and improperly bolstering that statement by saying, you know, when he came back to the police station after this alleged buy, he confirmed all of this with us. This is exactly what he said. So the jury didn't hear what happened from Vinton alone, the person that was in the car. They heard it from the police officers who weren't in the car, who didn't see this drug deal take place, and had no business bolstering the credibility of Vinton. You also have the police officers IDing Christopher as the person driving the car, though they had no better perspective and no better ability to do that than did the members of the jury that were sitting there in judgment of Christopher during trial. Now with this testimony regarding the prior 25 purchases of drugs from the defendant, was there ever any analysis, I mean there was no objection and I take it there was never any analysis as to whether or not the probative value was outweighed by the prejudice? That's correct. There was no objection, there was no analysis into that at all. And so the problem that we ultimately have here is this narrative. During closing argument, the state, may I just finish this point, I see that my time has expired, the state brought the jury back essentially to Boyd Dyer and told the jury, you've listened to the evidence, remember each and every one of you said that drugs were a problem in your community. The defendant is out peddling this misery, he is out selling drugs in our community. All of these issues that I've discussed were constituted ineffective instances of counsel that should have been ejected to or there should have been limiting instructions. And for that reason, we'd ask that Christopher's case be remanded for a new trial. Thank you. Mr. Lonergan. Good morning, Your Honor. Good morning. Counsel. Defendant has raised a number of questions here on appeal, and I really don't want to waste the court's time by addressing those that the court isn't seriously concerned about. So if there is one or two issues that you want to draw my attention to, I'm happy to address it. In the absence of that, I'll take the first one that he addressed, which is whether or not we have reversible error because of the lack of defense counsel sharing with their client the existence of a plea agreement. I don't concede that that's true. I think that she testified that she attempted to do that and thought she had accomplished that by having a conversation at the defendant's home days prior to appearing at trial. Whether or not that was successful in her conveying it to the sister or whoever who conveyed it, then to the defendant, I don't think that's the important issue. Whether or not that was error or not, there has to be an opportunity at some point to correct an error if error is present. And that's the procedure that's commonly employed by all courts and which was done in this court, is trying to bring to the attention of all parties whether or not there is an offer on the table. And I'm sure all of you have some familiarity with this process. And what was done here is not unusual. The defendant was given the opportunity. He heard the last best offer from the state. It was a very good offer. The minimum, in fact, that he could expect to receive if convicted of the offense with which he was charged. There isn't any suggestion in the record that he didn't have sufficient time to contemplate it. The record is silent, so I suppose you can interpret it in any way you wish. But how these things are normally done is the judge takes leave of the bench, lets counsel discuss this issue with her client, and then he asks, are we proceeding to trial? The inference being, if we are, obviously the plea agreement has been rejected by the defendant and he wishes a trial. There's no suggestion that the state wants to try this case. Apparently they would like to settle it. There's no suggestion the court wants to waste its time with an unnecessary trial. I don't think the public defender wishes to do so either. The implication has to be it was the defendant who had the opportunity to accept a very good plea agreement and decided not to. And then after the fact, being convicted of this offense, I don't understand how he thought he could possibly avoid a conviction given this evidence. He now thinks twice about it. Monday morning quarterbacking, perhaps I would have been better off if my attorney had beat me over the head and insisted that I take this plea offer. I'm sure that she made a pretty strong argument. I don't know how she was thinking the defense counsel could overcome this evidence. I mean, this is a controlled buy. The evidence hardly gets more overwhelming than what is present in this case. So would you say that this case was a strong case for the people? I sure think so, Judge. I mean, there's always little holes if you want to try to magnify them. But I have seen a lot of controlled buys, and this is pretty common. But there are times when you have controlled buys where officers are able to observe during the entire time. And there were some issues with that here. Would you agree? I would agree. You have the word of the informant who is a drug user trying to work off a case, and it doesn't really come down to his word versus the defendant. I mean, officers really couldn't weigh in that much based on what they didn't see. Fortunately for the state, we don't really need too much of the officer's visual identification. We have a videotape. And I would disagree with defense counsel's assertion of what that videotape displays. I watched it. It obviously shows the defendant. It obviously shows the defendant engaged in a drug transaction. I don't know how anybody can watch this video and come to the conclusion this defendant is not guilty of the offense for which he is charged. So yes, there are instances, and I think a videotape is pretty difficult to overcome. But it's not present in all controlled buys. In fact, most of the previous ones I've had don't have videotape. That's kind of the hammer. It usually requires the officers themselves to say, yes, I saw the defendant himself, I saw the drug transaction or whatever. But with videotape now, I mean, the guy had a wristband. There's an audio recording of the events as well. So there's conversation, and I don't know how the defendant thought he was going to overcome this evidence. I think it's a very strong case. And the suggestion that the defendant had some motive to cooperate, yes, to falsely testify. I don't see that. Are you talking about the informant? Yes, unless there's some suggestion that he has... Who's going to be able to avoid felony charges? Correct, but it doesn't necessarily suggest that by putting innocent people in jail you're going to do that. He was supposed to cooperate. So I guess you could argue he wanted to hide or he didn't want to give up the real people that he was purchasing drugs from. I mean, the testimony of trial was that the officers had seen this particular C.I., Mr. Vitton, purchase drugs on multiple occasions in the past and knew him to be a drug user. So the idea was we will not prosecute you for using the drugs in this particular instance if you assist us in some way. It didn't necessarily suggest that in the absence of a conviction he was going to be charged. All he had to do was be of assistance, and he was doing that. If the officers suggested, and I've seen this in other controlled bodies, they go out and find the guy who's the potential defendant, and they say, call this guy and see if you can arrange it. In this instance, he did offer up this guy as someone he had purchased drugs from in the past and could do so again in the future. So I suppose you can make the argument that perhaps he was hiding his true source and offering this guy up as the false scapegoat. I don't see any evidence of that brought out at trial, though. The defense that was offered was it wasn't me, and I wasn't selling drugs. And granted, .1 grams of drugs is a pretty relatively small quantity. The C.I., Mr. Vitton, could have potentially hidden it. The officer was pretty, I think, truthful in that regard. He did do a thorough search of him before and after. But we're talking a relatively small amount of drugs. So it was conceivable, it's possible that he could have hid it. But there was no evidence of any motivation to falsely accuse this particular defendant. And there's overwhelming evidence of his guilt. My view of the videotape doesn't leave any room for real doubt that this guy was involved in a drug transaction, this guy being the defendant. There's been some suggestion that there's a multiple of minor errors cumulative together taint this trial. There's very few trials that have this wave of evidence against a particular defendant. Whether or not any of the errors that are raised by the defendant now on appeal are legitimate, I would argue that they weren't. So you believe that it was okay for the officers to get up and testify as to the informant's statements? Maybe I shouldn't say okay. Was that in accordance with the rules of evidence? If you deem that as a prior consistent statement, Judge, I can see it as being potentially problematic. I don't know that it was actually a prior consistent statement. That rule of law normally involves a written statement by the witness who's on the stand. And it's normally brought out in cross or redirect, attempting to bolster that particular witness's statement. This is actually a statement by an officer as to what he heard. Now, you can argue that that's a hearsay statement. It is an out-of-court statement, but I don't know that the purpose of the hearsay rule, number one, is actually to prohibit or to allow an opponent to question the veracity of the statement.  Mr. Bitten did testify that he did make those statements. He was available to defense counsel for cross-examination. So the entire purpose of the hearsay rule is really kind of avoided, because the person making the out-of-court statement is in court, is testifying to that statement, and is available for cross-examination. There's also exceptions to the hearsay rule if it's deemed to be hearsay, and that is were these officers actually offering this for the truth of the matter asserted, or were they offering it an explanation as to their conduct? The defendant is charging that the police have done an insufficient job of evaluating the truthfulness of Mr. Bitten, perhaps done an insufficient job of evaluating the strength of their case, and whether or not this particular defendant is guilty of the offense charged. They are attempting to explain the steps that they took and the actions that they, and the statements that they relied upon and the actions they took in reliance upon those statements. So was there a limiting instruction, or was the jury advised that it wasn't being offered for the truth of the matter? In a perfect world, there would have been a limiting instruction, if in fact there had been a prompt objection to that statement. But just because there was not, I don't think it raises the issue of incompetency of counsel either. There's trial strategy in that trying to highlight this. Does the jury really forget what they've just heard because they got an instruction from the judge, or is it reinforced? And I'm not sure the objection would have been that successful. It's more of a background. The defense counsel was not denied the opportunity to challenge this statement by the person who is alleged to have made it. And I think that's the purpose of the hearsay. That's why we have it. So perhaps everything's not done as we would prefer it in hindsight, but rarely is a trial accomplishing that feat. On the whole, if you look at the strength of this evidence versus the types of objections that are being made now, at best, it's harmless there. Mr. Wilson briefly touched on the need for a crankle hearing based on a statement made by a defendant in the PSI. Can you briefly address that? Was that statement contained in the PSI sufficient to trigger or require the crankle hearing? I don't think so, Judge, because it does bring to the Court's attention perhaps some misgivings with counsel, but it's something that the Court was perfectly aware of. The Court knew that it had already had this discussion with the defendant in open court. It was aware that the State made the offer, the defendant heard the offer, and the defendant turned the offer down. What more inquiry is going to be necessary? So I don't think it does raise... Now, had he said something like, I didn't think she did a good job representing me in trial because she didn't object to things or whatever, if he had brought another issue or expanded on the reasons for his displeasure with counsel, perhaps a crankle inquiry would be required. But in this instance, the judge is perfectly aware of what he's talking about. The judge knows there's no basis in the case, in the record, that supports that concern. So I think it's properly dismissed. Doesn't case law indicate that there are certain vehicles that are the type in which a crankle inquiry or a claim of ineffective assistance can require a crankle inquiry? Here, this is information that's contained in a PSI. Is that the type of vehicle that would necessitate a crankle inquiry? In other words, is it a motion or request directed towards counsel's effectiveness? I don't see it as that way, Your Honor, and I understand the point the Court is attempting to make. I am not aware of any case law addressing whether or not a comment made in a PSI rises to the level of necessitating a crankle hearing. I believe that the defendant is required to make a formal showing, a formal objection to the Court, either by some post-trial motion or comment in open court. This was not done. And again, the comment that was made, I think, is so easily dismissed because the Court is aware of what transpired concerning that very subject. So I really don't think that what is present gets rised to the necessity of a crankle hearing. If there's no further questions from the Court. The only other concern I had was the fact that it was testified that the informant had purchased drugs from the defendant on 25 prior occasions. And obviously there was an objection, but that seems highly prejudicial, particularly coming from a police officer. Well, the police officer was reciting what had already been testified to. Which is problematic as well. Yes. So, in all fairness, the defense counsel did have an opportunity, but I mean, I guess a motion to the limit is what the Court is suggesting should have been done. I think the evidence is obviously being offered because there's challenges as to the identity of the defendant. The defendant is saying, that's not me. Well, you know, I didn't just meet you the other day. Why is it that I picked you out? Why is it that I'm so familiar with who you are? How did you come to get into this mess in the first place? And so that needs explanation. Yeah, there's always a balancing of whether or not appropriate value outweighs prejudicial effect. But if the defendant is going to be allowed to challenge your identification, if he's going to be allowed to challenge that it was not him, that it was no drug transaction, this is all a big mistake, then the State has to be free to establish the basis on which these events came to fruition.  Thank you, Mr. Londrigan. Mr. Wilson, rebuttal. Justice Harris, you asked about the Krenkel inquiry. My understanding from People v. Ayers is that the defendant makes anything that gives the Court a belief that there is an allegation of ineffective assistance of counsel, it triggers the Court's duty to inquire into that. Here the defendant said that he was not helped in the right way by his counsel because he would have taken the three years, and it was in the PSI which the Court is required to review prior to sentencing the defendant. So this was something that was brought to the Court's attention and something I would argue needs to be sent back for a Krenkel inquiry. The State talks about the Court being given an opportunity to correct the error in this case, and I would proffer that this could have been done had a Krenkel inquiry been done. Had a Krenkel inquiry been performed, the Court could have asked the defendant in court, what happened regarding that plea agreement? And the defendant could have explained that counsel didn't give that offer to him in a timely fashion and would have resolved any doubt. I'm merely pointing out that the State said that normally Courts are given an opportunity to correct the error. The Court was given an opportunity here, it just didn't take advantage of that opportunity by holding a Krenkel inquiry. Would you agree that Mr. Londrigan indicated that here it's irrelevant because the trial court was present in court, and the court heard that the offer had been communicated to the defendant, and if we were to agree with the State that counsel was not ineffective, then the Krenkel issue is moved? I would not, because if there can be a Krenkel inquiry for something as basic as saying ineffective assistance of counsel, which is what People v. Ayers said, where a defendant makes a claim that can be interpreted as ineffective assistance of counsel, it merits at least an inquiry to make sure that what was represented in court maybe was accurate. Maybe the defendant, you know, maybe the offer wasn't properly communicated. Maybe the details of the offer were left out that the defendant found out about later. So there still needs to be an inquiry here. The State, in agreeing with Justice Order White, pointed out that the evidence in this case was strong for the People, I believe, was what the State said, and I point out if that's true, it's largely because of the errors committed by defense counsel here. If you strip away all of the prejudicial material that defense counsel should have objected to that she didn't, and that was then let in, what you're left with is the testimony of Vidden, who was a convicted felon, drug user, working off a case for the police, and I would argue that the State is wrong when it says that he had no motive to help the police here. Obviously, if the police are saying, if you give us your assistance, we'll take care of this charge that's pending against you, the police are wanting some results here. Otherwise, they wouldn't have made that offer to him if they didn't think that he could find people who were engaged in the drug trade and possibly have that result in an arrest. I would also say that the... Well, no, pardon me. And the testimony of the officer is hearsay. It is improper bolstering. The State, I believe, made the argument that maybe it was given to as a result of specific questions or responsive and therefore wasn't hearsay. I've excerpted on page 20 of my initial brief the paragraph, the narrative paragraph, that the police officer was able to give to the jury without objection in this case, and at least in my brief, and this isn't a verbatim recitation of the transcript, but what I have in my brief is the State asked Quinley, who was the officer, what he learned during Vinton's interview. And then he went on for, I'm guessing in my brief, 15 to 20 lines of statements that Vinton had provided when they got back to the police department. If the jury had any question about who to believe in this case, whether to believe Vinton or not, having an officer come in and having that officer be able to say, essentially, you can trust Vinton because right after the Bible came in, he told us the exact same story, and this is what he said, that fills a blanket for the jury here and makes it very persuasive. It makes a strong case for the State, and that was improper. So we would ask that his conviction be reversed and his case be remanded for a new trial, or alternatively ask that the plea issue, that his case be sent for a hearing and or a crankle inquiry. Thank you. Thank you both. The case will be taken under advisement and a written decision shall issue. Thank you.